Our next case for argument is 24-2009 Regeneron Pharmaceuticals v. Mylan. May it please the Court, Sean Van Horn on behalf of the appellant Formicon AG. So the question today is why is a German biotech company from the suburbs of Munich facing a suit in the Northern District of West Virginia, and we posit because our opponents have misread this court's precedent in the Accorda case. And I first want to address the court's recent order on Rule 4K2. Rule 4K2, not the overextension of Accorda, is the proper lens for determining personal jurisdiction over a foreign defendant such as our client Formicon. But as we proved below, it does not apply because Washington State has personal jurisdiction over Formicon, which negates the application here. So as an initial matter, Regeneron forfeited the 4K2 basis of personal jurisdiction below. Formicon addressed it in its opening brief, its motion to dismiss. That's at Appendix 26094. Regeneron then failed to address it in its response to that motion to dismiss on personal jurisdiction at 26121. In Formicon's reply brief on the motion to dismiss, it noted that they had conceded. Okay, well, so let's not talk about waiver because you're the only one talking about personal jurisdiction, and there was no waiver in the other case where they didn't talk about personal jurisdiction, right? So they disputed under 4K2 in the other one. You're saying that in the Samson case they dispute jurisdiction? Okay. Since you all have divided it up, and I respected not asking him all the personal jurisdiction questions, I'm putting them to you, can you skip over waiver because I'm not going to waiver? Of course. My apologies. I thought the order had only been entered regarding 4K2 in the Formicon case, so that's why I was addressing it for us. But let me just address it factually with respect to Formicon. So, yes, we agree 4K2 is an appropriate lens. We have a foreign defendant who's being sued, and so 4K2 would be an appropriate way to look. The first requirement under 4K2 is that there would be no state in which there would lie personal jurisdiction. So in the briefing on the motion to dismiss, we addressed that. There are cases that say a company can't just assert, well, I can be sued in this case as a litigation strategy to get around the plaintiff's choice of forum in lieu of their own, and I assume you're going to tell me that's not what happened here. Yes, of course. That's exactly not what happened. So the In re Stingray case that was cited in the court's order is not relevant here. There was no unilateral post-suit conduct that we alleged. The conduct in the state of Washington began five years before the lawsuit was filed. It's your contract with the manufacturer. Yes, at Appendix 14707 in our motion, Formicon's response to the motion for PI, we had actually used it as a prior use case. If that's the case, then there's personal jurisdiction over you, not just in Washington, but also in California, correct? This was not below. There is evidence of contact with the state of California. It's actually in your 26118 paragraph 6. Paragraph 5 is where you talk about your contract with Biologic. Paragraph 6, use identical language for your contract with another company. I think they might be confidential, so I'm not going to say the name. Paragraph 7 is where you talk about a contract you have with another company who's going to do some packaging and labeling, and that's in Delaware. Precisely and identically, what you allege your contacts are with Washington State are also precisely and identically alleged with regard to California and Delaware. Am I correct in that? You're correct factually. Those are things that are in the fact record. We agree in highlighting those. Just to be clear, so if your view is personal jurisdiction exists over us in Washington by virtue of this contract we have, then personal jurisdiction also exists over you in California and Delaware by virtue of the other contracts you have, all of which are itemized one by one in your answer. That I don't agree with because we only conceded jurisdiction in Washington. There are contacts, but whether those— It's not relevant to me what you conceded. Your concession, you have minimum—in order for there to be personal jurisdiction, you need to have minimum contacts. Right. We're not in the Stingray world. We both agree. Agreed. So you've got to have minimum contacts. What you allege exists against you in Washington, you identically allege in California and Delaware. I disagree that it's identical. Let's look at the document. What is it? 26118. 26118. I think I have the wrong appendix. I might—26118. Can I look at yours? I'll just start with you. Yeah, don't you in paragraph 6, 7, and 8, do you have it in front of you? I agree with the facts that you're talking about. I'm aware of the contracts that we have with suppliers in California and—I'm not sure it's Delaware, but in another state on the East Coast. My point is just that— It won't be in California, and it is—well, at least you allege it's Delaware. Okay. I assume that's probably what it is, right? Okay. Okay. I'll concede that. All right, so—and then you also have an agreement with somebody else in—looks like Pennsylvania. Correct. Those are correct. So those are all places where personal jurisdiction exists over you. What I take issue with is whether we reach the legal conclusion that there's personal jurisdiction there. Whether that is a sufficient minimum context as an evaluation that no one has done yet. There are contexts with those states. Do they rise to the level of creating personal jurisdiction in those states? I do not know. Okay, but your allegation with regard to Washington is identical to your allegations in terms of the amount of contact you have for each of those other states. So if you want me to accept that there are minimum contacts with your company in Washington based on what you've alleged, then how are there not minimum contacts with your company in the other places? So, respectfully, the type of contact with Washington is far more substantial than the context in those other states. Okay, well, then distinct—so all I have to go on is what you have here. Correct. There's nothing else. Well, I'm going to cite you to the motion to dismiss brief at 26111 in the appendix, where we discuss the substantial evidence that is located in Bottle, Washington. So that's where the contract manufacturer, that's where the allegedly infringing product has been made and will be made going forward. So to the extent that there will be contacts with a state in the United States, not only will there be contact with that state, there already has been. There's ongoing contact there. That is very different than, for example, having a supplier. You want me to look at 26111? Correct. That's our motion to dismiss brief. I'm at 26111. What is it you want me to look at? Why don't you read to me what it is that you're talking about? Because what I'm looking at is about— So we talked about the non-party witnesses who are located at the contract manufacturer near Seattle, Washington. This is about convenience. Right. So these were facts that were put in the—we were also arguing to transfer the case to Washington State. But convenience is not personal jurisdiction. Correct, but it's highlighting the contacts and the nature of the contacts with that state, which are very different than just having a contract with a supplier. They put together a manufacturing facility in Washington that will produce the allegedly infringing product, and that organization is responsible to do the manufacturing, which includes putting together the cell cultures and cell culture media for that manufacturer. They're going to do the manufacturing in Washington, but you say that you have this other company, and I won't say the name just in case it's confidential, but that is in Delaware with headquarters in Pennsylvania that's going to do all of the final packaging and labeling for all of your orders. That's correct, but that is not— So why—all you've told me so far is you've got a company that you hired that's going to do manufacturing. That's the only thing that's in this record. No, no, they're doing the manufacturing. They've been producing it, the batch records that support the BLA. So do you think your minimum contacts is the fact that they're actually already doing it, or the minimum contacts is the fact that you have a contract with them to do it? I think both of those would create minimum contacts. Well, if both of them would create minimum contracts, and you already have a contract with a packager, why isn't that a minimum contact? It's not identical to the basis of personal jurisdiction in those other states, which is what I'm taking issue with. There are a whole series of contacts with the state of Washington where you set up a CMO years ago, you create the batch records, you send cell cultures, you have people go there. None of that is in this record. None of it is in this record. The only minimum contact you've alleged is the fact that you have a contract with a manufacturer. Well, I mean, we say right there that they're manufacturing the product in the state of Washington, where I just cited you. And I think we also have the declarant R30B6. What is the fact that they're manufacturing it, and how does that impact your contact with them? Your contact is your contract with them to manufacture it. Now they're manufacturing it. You also have a contract with people to package it and label it. And then you've got another contract with somebody else to do something else. I can't even remember everything. Let's see. You've got, oh, commercial. Let's see. You've contracted with somebody in California to do something, somebody in Delaware to package and label it. You've got all these contracts. You allege them one after the other in your answer. So we're not disputing those contacts. Obviously, none of them were with the state of West Virginia, which is the relevant point as far as we're concerned. So we only need to prove under 4K2 that there was one jurisdiction at least where there was personal jurisdiction. We put forward Washington State. Yes, there are contacts in other states. So 4K2 would have been satisfied. That's presumably why they dropped it at the motion to dismiss. So that's why they ultimately went all in on the Accorda case as a means to get around 4K2. And so our dispute, you know, as I started with at its core, is about how far you can read the Accorda case if you're going to sidestep the other bases. One other question that's not Accorda. So there's an MDL. There was an MDL order in place at the time this preliminary injunction was implemented. Preliminary injunction is part of the preliminaries that can still be done by the MDL court. Why is there actually a dispute here? If this went, got refiled elsewhere, they'd have to transfer it right back here? Right. So ultimately if there's no jurisdiction, I mean, the precedent has been clear looking at the Steele case by the Supreme Court. A court that doesn't have personal jurisdiction cannot issue a preliminary injunction. Now they, after the case is properly dismissed for lack of personal jurisdiction, try to seek a new preliminary injunction. And, indeed, if they come back to the MDL in a roundabout way, we don't believe they would have a basis to get a new preliminary injunction. The facts on the ground have changed substantially with the launch of Amgen's product, which this court permitted several weeks ago. And so irreparable harm will be a different calculation. In addition, Regeneron themselves pointed out below that under 35 U.S.C. 271E6B, that if this case is dismissed, they will not be able to seek anything other than a reasonable royalty, in which case there will be a consequence for having filed it in a place that had no personal jurisdiction. I guess I haven't looked into this enough to understand this. Your position is that in MDL cases that the only, that those cases cannot be referred by the MDL panel to a federal district court in a forum that would not itself have personal jurisdiction? No, we don't take issue with that here. We did argue to the JPNL that that was, yeah. Then I think I misunderstood what you were saying when you immediately jumped to Steel Company as a response to the scenario in which you get sued in the state of Washington and the next day it gets transferred under the MDL order back to West Virginia. Yeah, the MDL's jurisdiction would be predicated on personal jurisdiction in the transferring court. So here, if Washington, for example. So I guess I return to my question. So there will be a new case filed. But this judge could issue this same injunction by virtue of having it under the MDL order rather than having it as an initial matter. No, he would have two problems with issuing a new preliminary injunction. It would be a new case filed in the state of Washington that gets transferred, presuming that happens. And in that case, the new preliminary injunction would have to be on a new basis, not the basis of the old injunction. The facts have changed considerably. In addition, as Regeneron pointed out in their own brief, that under 35 U.S.C. 271 E6B, they would not be allowed to seek injunctive relief because under the BPCIA, if the case is dismissed, you can only get a reasonable royalty. So they argue that would be a reason to reject a dismissal for personal jurisdiction and only do transfer. But I posit here that the case law is clear that you have to dismiss the case if it lacks personal jurisdiction. They made the error in the strategic decision to file in West Virginia with no contacts. And, you know, as a result, they shouldn't be rewarded, essentially, to be sent back and essentially get a redo to file in the right place and then just fix it and patch it over. The case should be dismissed outright for lack of personal jurisdiction. And, you know, as I said, I mean, none of the, you know, just addressing a court briefly, none of the facts that animate a court are present here. There is no distribution network on the ground. We've made very clear that another company called Klinga BioPharm is responsible for hiring. But you all just don't – you never at any point address the one sentence in a corda that they have just hammered over and over again. And so I sure as heck hope that you mooted it before you came in today because they hammered the sentence over and over and over again, and you never address it. And the sentence in a corda is, and even if Mylon does not sell drugs directly to Delaware, it has a network of independent wholesalers and distributors with which it contracts to market the drugs in Delaware. Such directing of sales into Delaware is sufficient for minimum contacts. So we have a separate company that does the – You can't hide that way. We're not going to play a shell game here. Yep. So under a corda, they have – there is no distribution network at all in the state. We didn't have a distributor in place, and that's clearly in our brief, that we won't have any – let me just give you the specific – Is your client saying it has no intention to have its products sold in the state of West Virginia? The client has intent to sell in the United States, but they have not targeted the state of West Virginia by putting a distribution network in West Virginia. There's no distributor. The phrase, have not targeted, I think this is self-evident to you, can mean two quite different things for these purposes. That is, you haven't selected West Virginia as a place to distribute to the exclusion of anybody else, which I don't think you're saying and is implausible. And if that's all you're saying, why does that make any difference? So I would just say to our reply brief at three where we point out that another party will have to engage a distributor. Right, but that's the shell game point. The reason it doesn't make a difference is because, of course, everybody filing to get approval to sell intends generally to sell in the United States. Under their reading of ACORDA, the mere fact that you hope to sell one day in the United States means you could be sued in any jurisdiction in the United States at the choice of reference product sponsor in any federal court in any state because you hope to sell one day in the United States. And that can't possibly be right. Hope to is not the same thing as – Or intend. And intend and plan and enter into contracts that haven't quite been implemented yet because it only takes another two days and let's wait. The key language is targeting a particular state for them. There's no evidence of any targeting of West Virginia. There's undoubtedly an intent to sell in the United States. But you have to target a particular state under personal jurisdiction law. I don't know that you have to target a particular state so much as you just have to sell in all of them or sell in the state. Well, there's no even guarantee. Many biosimilars companies don't get off the ground and don't end up selling in all the states. I mean, you can look at examples like Adalimumab from AbbVie. Many of those companies have never even managed to launch despite an intent to sell. So using some future potential sale in a state is a hook for jurisdiction when there's no evidence of current efforts to target that state as is required by purposeful availment and by, respectfully, the ACORDA case where there were all those facts that Delaware was – they filed in Delaware. They registered with the pharmacy board. They had distributors in place in Delaware. Those are all examples of actual facts on the ground that you painted the target, the state of Delaware, to intend to launch the product there. If those facts existed for West Virginia, we wouldn't be here. But none of those facts exist. There's no evidence of any, quote, planned marketing in the state of West Virginia. There's just evidence general to the United States that they will eventually engage a distributor in Germany. To the entire United States. To the entire United States. Well, isn't – I mean, maybe not everyone thinks so, but I think West Virginia is part of the United States. Well, yes, it's almost heaven, but there are no country roads that lead from Munich to it. So as a result, we don't think it's a perfect – That was really well said. I mean, how much did you practice that? It's the first line that I – And just out of curiosity, how many people told you, please don't say that? There have to be people when you were mooted that don't do it. Just don't do it. I mean, I liked it. I thought it was great. So you win on that one. Well, it wasn't in the moot, but – No, you went rogue on that one, okay? That was taking quite a chance. We're over time. I like talking personal jurisdiction. I can answer more questions. Very good. Let's hear from the other side. Thank you. I don't have any jokes that good. Well, if you call me Mountain Mama, you're out of here. That's the last thing I'll do, I promise you. If I may start where my opponent ended, which is with Accorda. I obviously don't have the temerity to presume what the court meant by Accorda, but I can say that afterwards Valiant read Accorda to conclusively establish that future acts can confer jurisdiction in a case of 271E. There's been no dispute here today that those future acts –  Planned for future acts. Indeed. Those planned at the time. Yes, planned. And the court in Accorda said that by virtue of having filed an abbreviated application with FDA, that as an economic reality indicates reliably a plan to market in the United States. There's no dispute that there's a plan to market here in the United States. And there's really, like, no evidence, for example, that I see in this case that suggests – well, sometimes when people have these plans, they only market in certain states, right? Like, I mean, it seems to me almost – I'm not going to take judicial notice of it, but almost something I could take judicial notice of, that, you know, when you get this approval, you sell a generic, you sell it everywhere. That's right. And you don't need to take judicial notice. We depose, as part of jurisdictional discovery, their corporate representative. You can look. It's a 26258 through 16. We say, where is this going to be sold? And he says, in the United States. We refer to a map that's at 26377, as you will not be surprised to hear. It's the United States as a whole. It doesn't black out West Virginia or any other state. One could imagine a scenario in which one intends to contract with a regional distributor only and say, I'm only going to market my drug in New York or wherever it is. Or it might be illegal in a particular state. Right. Sure. That's, I suppose, a possibility. There are scenarios like that that one can contemplate. This is not one of them, I would submit. Does Accordia require you to have plans to distribute in the forum state? I think plans to distribute anywhere are sufficient or everywhere are sufficient. Not specifically to the forum state?  I think it says repeatedly in Accordia that they have plans to distribute their product in Delaware and elsewhere. Or Delaware and other places in the United States. So that page five, I think actually they crystallized the dispute quite nicely at page five of the reply brief. And they say the dispute between the parties is whether there needs to be specific activity planned for West Virginia per se, West Virginia as opposed to everywhere else, or whether it's enough to have plans to market nationwide. And what the court said in Accordia is that... So just let me clarify, because I think that you maybe didn't say it as precisely as I think you meant to. They do have plans to do this in West Virginia. Absolutely. They have plans to do it everywhere. West Virginia is part of everywhere. You said it better than I did. Right? Absolutely. That's exactly the point. And the court said in Accordia, if the plans already had been in place, if this weren't a 271E action, but instead were a 271A action, and they actually sold everywhere, there would be no doubt, the court said, that there would be jurisdiction in Delaware as in every other state. So we're dealing with sort of the fiction of 271E, where the acts for which we're seeking redress have not yet occurred. We have an artificial act of infringement under 271E, the filing of the BLA. And we're seeking redress for those future acts that will occur everywhere, including in West Virginia. So we think it's clear under Accordia, and courts have applied Accordia uniformly. We cite the Apicor case. We cite the Millennium case out of Delaware, where courts without the other facts that Formicom points to, without the registration, et cetera, have simply read Accordia for the proposition that where you file an application to sell everywhere and you intend to sell everywhere, you're subject to jurisdiction everywhere. I actually think it's clear here. Do you agree that you cannot prevail under 4K2, though, because they do have personal jurisdiction by virtue of having these contracts? I don't agree with that, Your Honor. Well, you gave it up below. Excuse me? You gave it up. No, we didn't give it up below. We were not permitted to invoke 4K2 below because a precondition for invocation of 4K2 is service of process. We had not yet served process, and so we were not permitted to invoke 4K2. Since then, our motion for alternative service has been granted by the district court. That happened at the end of September. We served the complaint in October, about a month and a half ago, so we now could invoke 4K2. None of the facts that Your Honor was discussing with opposing counsel have been developed with respect to whether one contract or another is sufficient to confer jurisdiction. I'd submit it's not. Their prior manufacturing, to which he referred, is not infringing conduct. That's all safe harbored. We're not seeking redress for any of that. The act of infringement for which we're seeking redress is their 271E filing of their ABLA. After their product is approved, they will sell everywhere. They may manufacture in Washington, but right now, if there's not jurisdiction under a quarter for their planned future acts, if that's somehow not good enough, then it's not good enough to say that we plan to manufacture in Seattle or plan to do something else in San Diego or plan to do something else in Wilmington, Delaware. It's either enough under a quarter to have future conduct, and it is. Well, because they're not claiming that personal jurisdiction lies against them under a quarter in Washington. They're claiming personal jurisdiction lies in Washington because they have minimum contacts by virtue of the contract that they have established for manufacturing the goods. But that hasn't happened yet in any infringing way. There's no connection to the infringement. The infringement here is the filing of their application, and the act, again, for which we're seeking redress is the future conduct. That past manufacturing that happened in Washington, we're not asking for damages. We didn't file a claim of 271A infringement saying you've infringed in Washington. Aren't they intending to manufacture in Washington? Isn't that part of the same planned acts that you're talking about? I agree, but they're no more intending to manufacture in Washington than they are to sell in West Virginia and Delaware and Michigan. What about, I guess I'm thinking of an intermediate case or a third case between what they manufactured for the purpose of getting the FDA approval and the future manufacturing. The third case is right now they are manufacturing to stockpile for selling. So they're actually doing it right now, not for the purpose of getting FDA approval. And it is actually right now. So it's not even future. Well, first of all, I don't understand that to be the fact, but in that hypothetical. I just made it up. You made it up. In that hypothetical, Your Honor, I don't think we have filed. He's been peeking in the windows. Thank you. Please, thanks for telling me. Maybe we'll do something about that. But the point is that we haven't done anything about it. I think that could be a minimum contact for some future claim of infringement that we have not brought. If we saw they were stockpiling and committing acts of infringement that were not safe harbored under 271E1 and say that's an act of infringement under 271A, I think we would have to file an amended complaint and say you are now committing infringement. We want damages for those acts of infringement. And then we would be saying the act of infringement for which we seek redress is that manufactured in Seattle. And I think we would then, of course, have personal jurisdiction in Seattle. But that's not the fact. That's not the claim that we've brought. Those aren't the facts. And so what we have now is a 271E case. And as I said, those are all about future acts. Just help me understand this. You said you got completed service by a mechanism different from 4K. Yes, we filed a motion for alternative service. That was granted by the court on September 30th. Yes, yes. And then so we completed that service on October 16th, 2024, a month and a half ago. And do you understand that 4K2 is restrictive in the sense that if its circumstances are present, that that's the only way you can get personal jurisdiction? Oh, no, I don't understand it that way at all. I think if the court agrees that there's jurisdiction under a quota, I don't think one gets to 4K2. I view 4K2 as some alternative, in a way, stopgap mechanism, to use the term that Stingray used, to have jurisdiction in an instance where one otherwise wouldn't under 4K1. I would observe one other thing, which I think— Wait a minute. Is your argument because a quota establishes a category that constitutes minimum contacts? Then under 4K1, we have jurisdiction. Our argument—let me try to put it as clearly as I can—is that we win under a quota. That much I got. That much you got, good. And then if we win under a quota, then 4K2 is something that the court never has to look at at all. If, for whatever reason, the court disagrees with us and that there's not jurisdiction under a quota, then the court could look to 4K2. I would agree that that has not been developed below. We haven't addressed that. The district court has not addressed that in the first instance. But I think if one dismisses our quota argument, I think it would require the court to say that these future acts are not sufficient to confer jurisdiction. And if that's the case, then it's hard for me to see how it would be the case that the future contemplated act of manufacturing in Washington State somehow confers jurisdiction where the future contemplated act of selling in Wisconsin or West Virginia somehow does not. And so I would then say that 4K2 would permit jurisdiction in that instance because they would not have anywhere where there's jurisdiction if there's no jurisdiction under a quota. And so 4K2 would apply to confer jurisdiction. I do want to comment before I sit down about the implications of what would happen if the court for some reason decided that there were not jurisdiction, because opposing counsel suggested that the correct thing to do in that instance would be to dismiss the case. I don't think that's correct. Under the Hightower case out of the Federal Circuit just last month and other cases from the Fourth Circuit, the proper avenue at that point would be transfer under 1631 to Washington State or wherever there was jurisdiction, not dismissal. Dismissal is inappropriate because it wouldn't be in the interest of justice. What they're trying to set up is a dismissal that would have draconian consequences under 271E and would restrict our remedies under a lawsuit. They're not dismissal and then refiling in Washington State. That's not necessary. That's not permitted under either Federal Circuit law or Fourth Circuit law. In that instance, transfer under 1631 would be the right mechanism. Isn't that especially true in circumstances where in advance of this lawsuit, it would be virtually impossible for you to have known to have sued them in Washington State? Exactly right. Until you gained the answer or the motion or whatever it was that I was questioning, how do you know? How do you know where they have all their contracts? That's absolutely true in the ANDA context. It's sometimes true in the ABLA context. There's a patent dance, as Your Honor knows, where there's an information exchange and the ABLA can be produced before the litigation. But as Your Honor knows, under the Amgen-Sandoe case from the Supreme Court, that's not required for a biosimilar applicant to produce to the reference product sponsor, the ABLA. So there could be a scenario where we have no idea where we could sue. Oh, so just to be clear, is this your sort of way of telling me you actually did know about Washington before? We had received their ABLA. We didn't know that they thought Washington would be a place where there was personal jurisdiction. We didn't know whether California was. I still don't know whether they think California is. But I think as a general proposition, we wouldn't typically know where there's jurisdiction and where there's not. In the ANDA context, there's virtually no information exchange before suing. So you're throwing darts at a dartboard in their scenario. I would submit that all of that is gone under ACORDA. ACORDA has brought order to chaos and has been applied very simply by district courts to confer jurisdiction since it was authored and issued years ago. And I don't think there's any reason to dispute that. I judge Toronto. You said it, not me. And so I think as long as they're here, I can do it. No, you can't do it. I was making fun of you. You can do it. So we think a transfer would be the proper thing to do. And as Your Honor suggested, if there were a transfer under 1631 to Washington or California or anywhere else, then automatically the case would immediately be transferred back to West Virginia per the MDL order. They could have but did not appeal the MDL order. So it would automatically be transferred to West Virginia. And the court in West Virginia under FMC and longstanding law has the ability as an MDL court to enjoin a party. So this is just, as we've said in our brief, kind of a merry-go-round that leads nowhere. And if circumstances have changed, they can always get a revision even in this one. Absolutely. As I suggested a moment ago, Rule 65 permits when there are changed circumstances to go back and say, we want relief from the injunction of the district court. But again, that's all in a scenario where the court disagrees with us on jurisdiction. I just wanted to clarify that the proper avenue at that point is transfer under 1631, not a draconian dismissal that would have severe consequences with respect to the relief we could potentially seek. If Your Honors have any further questions on personal jurisdiction or double patenting or otherwise, I'm happy to entertain them. Otherwise, I'll sit down. Thank you, Your Honor. Do I have a minute or two? Oh, yeah. Give him two minutes. Sorry. Yes. Yeah. So I just want to address a few points. So the fundamental problem of expanding a court to just rely on general plans to market in the United States without particularly targeting a state but not exempting that state affirmatively, I think it takes us out of line with Supreme Court precedent on personal jurisdiction, which requires purposeful availment. I mean, even in the internet context, there's got to be some evidence that you tried to go after a particular state. And a court is very clear in anchoring itself, and I agree, quite articulate on this point, that you must connect directly to the forum. You register with the pharmacy board in that state. You have a distributor on the ground in that state. They're all connected to Delaware. There are no such facts here for West Virginia. None. And so the effect of this is a slippery slope. There is nothing to stop a future case from beginning in a federal court in Saipan or Alaska or Puerto Rico or wherever they choose to bring it if there is a general plan to market in the United States, and that's a real problem. From a due process standpoint, you can look at Worldwide Volkswagen, which says that defendants should be able to plan their corporate activities so they can fairly know where they're likely to be sued. What do you do as a biosimilar? Worldwide Volkswagen. It's been a very long time, but that was the manufacturer sold the car at that point in New Jersey, was it? Someplace. And then the car just went somewhere else. So there was no plan or set of contractual relationships with a sale activity outside the initiative. The situation here is actually worse. It's just as bad or worse than the stream of commerce, because the plan to sell a car knowing that it will end up in any particular state, like you're talking about in Worldwide Volkswagen, is not dissimilar from the case of planning to sell biosimilar products throughout the United States. Who knows whether West Virginia will ever make the planned marketing targeting campaign eventually when there is a distributor in place? Maybe it will. Maybe it won't. It's not carved out. But you have to have facts that tether to the particular forum. Otherwise, there's no way for the defendant to plan where they could be sued. They have to be prepared to be sued in any jurisdiction. Okay. Thank both counsel. This case is taken under submission.